[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Pursuant to a violation notice issued by appellant, Ohio Liquor Control Commission ("commission"), on September 22, 2000, appellee, PT Properties, Inc., dba The Sports Bar, a D-1, D-2, D-3, and D-3(A) liquor permit holder, was charged with permitting tip-ticket gambling on its permit premises in violation of Ohio Adm. Code 4301:1-1-53. On October 7, 2000, the commission conducted a hearing at which appellee denied the charges but stipulated to the investigative report and the facts contained therein concerning the alleged violations. In pertinent part, the investigative report indicated that there was no current 501(c)(3) agreement on the premises.[1] In an order mailed October 31, 2000, the commission found a single violation and assessed a $10,000 forfeiture or a suspension of the liquor license for 100 days. Appellee appealed the order to the Franklin County Court of Common Pleas on the sole basis that the penalty imposed by the commission was too severe. Appellee did not attack the validity of the commission's finding of a violation. In a decision and judgment entry filed August 23, 2001, the common pleas court determined that it had no authority to modify the penalty imposed by the commission because the commission's order was supported by reliable, probative and substantial evidence. Accordingly, the common pleas court affirmed the order.
 {¶ 2} On September 24, 2001, appellee filed a timely notice of appeal to this court. On October 24, 2001, appellee moved the common pleas court to vacate its August 23, 2001 judgment pursuant to Civ.R. 60(B), or, in the alternative, to reconsider its judgment. Appellee argued that it had recently discovered that two 501(c)(3) letters found on the permit premises had been confiscated by law enforcement personnel during the search of the premises and had not been properly inventoried, recorded or reported. Appellee maintained that as a result of these procedural irregularities, appellee was denied the opportunity to present an affirmative defense to the charged violations. Appellee attached several documents purporting to establish that the tip tickets it sold were for the exclusive benefit of a 501(c)(3) corporation.
 {¶ 3} Contemporaneous with the filing of the motion in the common pleas court, appellee moved this court for an order remanding the case to the common pleas court for determination of the motion. This court granted appellee's request on November 1, 2001. On March 5, 2002, appellee informed this court that its motion to vacate/reconsider was still pending before the common pleas court and requested additional time to make further inquiry as to the status of the motion. By journal entry filed March 7, 2002, this court refused appellee's request. On March 15, 2002, appellee moved this court for leave to supplement the record with the additional materials appellee had filed in the common pleas court with its motion to vacate/reconsider. This court denied appellee's request on March 20, 2002.
 {¶ 4} On June 6, 2002, this court issued a decision affirming the judgment of the common pleas court. PT Properties, Inc. v. Liquor Control Comm., Franklin App. No. 01AP-1102, 2002-Ohio-2875. On August 2, 2002, appellee moved the common pleas court to rule on its October 24, 2001 motion to vacate/reconsider. By decision and entry dated August 29, 2002, the common pleas court determined that the issue of the 501(c)(3) letters should be considered by the commission. Accordingly, the court vacated its August 23, 2001 judgment and remanded the matter to the commission for a full evidentiary hearing.
 {¶ 5} The commission has filed a timely appeal, advancing a single assignment of error, as follows:
 {¶ 6} "The Franklin County Common Pleas Court erred to the prejudice of the Liquor Control Commission when it assumed subject matter jurisdiction over case No. 01APE09-1102, and remanded the case to the agency for further consideration, an act inconsistent with this court's June 6, 2002, decision."
 {¶ 7} The commission argues that the common pleas court erred in vacating its judgment and remanding the matter for an evidentiary hearing before the commission on the 501(c)(3) letters issue after this court had already considered the issue and rendered a decision affirming the common pleas court's judgment. We agree.
 {¶ 8} In our June 6, 2002 decision, this court stated:
 {¶ 9} "In her report which provided the factual basis for the findings by the [commission], agent Amy Wycoff indicated that Richard Turner on behalf of P.T. Properties, could not produce a current 501(c)(3) letter at the time The Sports Club was searched. However, subsequent investigation indicated that the appropriate letters regarding the Child Care Foundation, Inc., had been present and had been seized by a detective of the Whitehall Police Department at the time The Sports Club was raided. Thus, the proceedings before the [commission] were affected by key factual problems, namely, whether there was proof that the tip tickets were being sold to benefit a 501(c)(3) corporation.
 {¶ 10} "When PT appealed to common pleas court initially, it attacked only the severity of the penalty assessed. PT did not attack the validity of the [commission's] finding of a violation. Only after the 501(c)(3) letters were found did new counsel attack the merits of the finding of a violation. The attack occurred after the common pleas court on appeal had addressed only the severity of the sanction and affirmed the order of the [commission].
 {¶ 11} "Counsel for the [commission] argues that issues regarding the underlying violation have been waived by PT's former counsel because those issues were not addressed initially. Under normal circumstances, this argument would be dispositive of the appeal. However, numerous mistakes by law enforcement personnel led to an inaccurate understanding of the facts before the [commission] and the common pleas court. Former counsel could not ethically argue that which seemed to have no merit, based upon the factual information properly available. Former counsel could not know, and waive, factual issues resulting from the failure of law enforcement officers to record, inventory and report about the items seized. Thus, we will not foreclose consideration of new issues." Id. at ¶¶ 8-10. (Emphasis added).
 {¶ 12} It appears that the common pleas court interpreted the italized language noted above as a directive to that court to consider issues raised by the untimely discovery of the 501(c)(3) letters. Based upon that interpretation, the court determined that the commission, given its expertise in such matters, was in a better position to decide the case in light of the "newly discovered evidence" and remanded the matter for a new hearing. (Aug. 29, 2002 Decision and Judgment Entry, at 4.)
 {¶ 13} The trial court misinterpreted this court's opinion. This court did not expressly state that it considered the 501(c)(3) letters as "newly discovered evidence." Indeed, the letters did not qualify as such, given that the permit holder presumably knew of their existence and could have obtained copies from the Internal Revenue Service even if the originals could not be located. Further, in this court's opinion in PT Properties, this court clearly considered and rejected appellee's contention that the mere presence of the 501(c)(3) letters on the permit premises absolved it from wrongdoing:
 {¶ 14} "Counsel for the [commission] argues that even if the 501(c)(3) letters were on the permit premises, the [commission] order is still proper because the evidence failed to demonstrate that all the proceeds from the sale of the tip tickets went to benefit the Child Care Foundation, Inc. and, therefore, that PT qualifies for the narrow exception contained in R.C. 2915.02(D) which permits gambling on a permit premises. Specifically, counsel alleges that PT received $400 in payment for every second box of tip tickets sold. This allegation is supported by no testimony but by handwritten notes, including `$400 profit every 2nd Box' and `1st Box $739 collected for charity tot. profit; 2nd Box $739 collected, $500 bar; $229 charity, tot. profit $400.'
 {¶ 15} "Ohio Adm. Code 4301:1-1-53(D) requires strict compliance with all of the provisions of R.C. 2915.02(D) in order to exempt a permit holder from the prohibition against gambling-type games and contests on a permit premises. R.C. 2915.02(D)(1) requires that all the money or assets received from schemes of chance (after deductions for prizes) be transferred to the tax-exempt organization.
 {¶ 16} "Given the stipulation of the above notes into evidence, we find that the common pleas court did not err or abuse its discretion in finding that the [commission] order was supported by reliable, probative and substantial evidence and was in accordance with law. Since PT made a profit, they were guilty of the violation." Id. at ¶¶ 13-15.
 {¶ 17} This court definitively determined that even if the 501(c)(3) letters had been properly recorded, inventoried and reported, such evidence did not exculpate appellee from wrongdoing because the stipulated evidence of the handwritten notes demonstrated that appellee profited from tip-ticket gambling. Because this court considered the evidence and arguments that were the subject of appellee's motion to vacate/reconsider in our June 6, 2002 opinion, the common pleas court erred in vacating its judgment and remanding the matter to the commission for further hearing.
 {¶ 18} For the foregoing reasons, the commission's assignment of error is sustained, and the August 29, 2002 judgment of the Franklin County Court of Common Pleas is hereby reversed. The matter is remanded to that court with instructions to vacate its August 29, 2002 judgment and reinstate its August 23, 2001 judgment affirming the October 31, 2000 order of the Ohio Liquor Control Commission.
Judgment reversed and cause remanded with instructions.
McCORMAC and BOWMAN, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Section 501(c)(3) of the Internal Revenue Code permits gambling at a permit location which has made an agreement with an IRS-approved charity that all proceeds from the gambling will go to that charity.